UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00244-DCN-2 |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| GUILLERMO NUNEZ-BELTRAN, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Guillermo Nunez-Beltran's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 173. The Government has filed an opposition to Nunez-Beltran's Motion. Dkt. 175. Nunez-Beltran filed a reply. Dkt 177. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

After serving five years in prison for distributing approximately one pound of methamphetamine, Nunez-Beltran was released on July 25, 2016. Dkt. 175, at 2. Then,

about one year after his release, Nunez-Beltran began again to engage in criminal activity. *Id.* In August 2017, Nunez-Beltran and his confederates—a subsequent jail phone call revealed Nunez-Beltran lead a crew and arranged drug trafficking activity throughout various states—were subject to a vehicle search. During the search, approximately 254 grams of cocaine, 399 grams of opium, 3.4 kilograms of marijuana, 27 marijuana plants, and numerous cell phones and drug ledgers were discovered. *Id.*

Given the seriousness of the crime and his prior conviction for a similar drug trafficking offense, the Court sentenced Nunez-Beltran on April 2, 2019, to 144 months imprisonment to be followed by five years of supervised release. *Id.* Nunez-Beltran is incarcerated at Federal Correctional Institution, Big Springs ("FCI Big Springs") in Texas.

### III. LEGAL STANDARD

Nunez-Beltran seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Nunez-Beltran failed to present evidence that he filed a request for compassionate release with the FCI Big Spring staff as required before filing his motion for compassionate release (Dkt. 173 and Dkt. 175 at 7). Because Nunez-Beltran failed to file a motion, the Court finds that he has not exhausted his administrative remedies. This alone warrants denial of his Motion.

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")).

## B. Extraordinary and Compelling Reasons

While Nunez-Beltran failed to meet his burden of proof, the Court will, nevertheless, consider Nunez-Beltran's arguments in support of his motion to determine whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Here, Nunez-Beltran bears the burden of establishing a compelling and extraordinary reason exists to justify compassionate release. *United States v. Holden*, 3:13-cr-0044-BR, 2020 WL 1673440, at 3 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id*. (explaining that

Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue, however, because Nunez-Beltran suggests one of the specific scenarios set out in the Sentencing Commission's policy statement applies in this case. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors"). He proposes that he should be released because he contracted COVID-19 in October 2020, has high blood pressure, and his back pain. He further advocates he is on the "verge of death,"[3] which necessitates compassionate release under the "medical condition" scenario in

---

[3] Nunez-Beltran contracted COVID-19 on October 18, 2020 and fully recovered. Dkt. 175 at 8. Nunez-Beltran also asserted that he was intentionally infected, that six other inmates were murdered, and he is afraid of being infected, or re-infected with COVID-20.

subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4]

While it is unfortunate that Nunez-Beltran contracted COVID-19, even considering his alleged high blood pressure and back pain, his risk of serious illness or death from COVID-19 is relatively low because of the efforts of the BOP and its action plan. Furthermore, there is no indication that Nunez-Beltran's risk of re-exposure would be reduced if released. *See United States v. Singui*, 445 F. Supp. 3d 212, 215 (N.D. Cal. 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

spreading within the prison"); *United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released.").

BOP Health Services Division, beginning in January 2020, activated an action plan that (1) screened all new inmates for COVID-19 exposure risk factors and symptoms; (2) quarantined new, asymptomatic inmates with exposure risk factors for 14 days; (3) isolated and tested inmates until they tested negative; (4) quarantined existing inmates for at least 14 days; (5) maximized social distancing by staggering meal and recreation times and preventing large gatherings; (6) provided face masks to all staff and inmates; (7) suspended social and legal inmate visits; (8) cancelled staff travel and training; (9) restricted access to BOP from contractors and screened temperatures of any contractor that did enter the facility; and (10) required heightened health screenings of staff. Therefore, there is little to suggest Nunez-Beltran is at greater risk of contracting the virus or in a facility that disadvantages him.

Additionally, the Government emphasizes that Nunez-Beltran remains a danger to society due to his drug trafficking conviction. The Court agrees. Nunez-Beltran was the source of supply for over two kilos of methamphetamine that he transported from California into Idaho. Additionally, he had already served a lengthy prison sentence for

drug trafficking and *was on parole* when he committed the instant offense. As the Government notes, reducing his sentence from 144 months to a sentence of approximately 40 months, "is only 25% of the original sentence" and does not adequately reflect the seriousness of his offense or serve the other 3553(a) sentencing factors.[5] Dkt. 175, at 11. The court agrees. Such a reduction fails to represent adequate punishment, especially when considering the severity of the crime. Therefore, the court cannot grant his motion for compassionate release at this time.

In sum, the Court finds that Nunez-Beltran did not exhaust his administrative remedies. And even assuming *arguendo* that he had exhausted his administrative remedies, general exposure to COVID-19 is not an "extraordinary" reason justifying release— especially considering the BOP's action plan. But even if COVID-19 were more prevalent at FCI Big Spring than in the community where Nunez-Beltran would be released, the Court finds there are persuasive reasons *not* to release him at this time. Weighing all

---

[5] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

relevant evidence, and relying on the 3553(a) factors, the Court finds that Nunez-Beltran has not met his burden of proof. Accordingly, the Court must DENY Nunez-Beltran's Motion.

Finally, with respect to Nunez-Beltran's request for appointment of counsel, there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES Nunez-Beltran's request to appoint counsel.

## V. ORDER

The Court HEREBY ORDERS:

1. Nunez-Beltran's Motion for Compassionate Release (Dkt. 173) is DENIED.
2. Nunez-Beltran's Motion to Appoint Counsel (Dkt. 176) is DENIED.

DATED: May 12, 2021

David C. Nye
Chief U.S. District Court Judge